**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VINCENT HARRIS,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| v. | : | |
| | : | |
| | : | |
| **THOMAS MCGINLEY**, *et al.,* | : | **NO. 22-3195** |
| *Respondents.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                 **April 30, 2026**

The Court writes for the benefit of the Parties and assumes familiarity with the facts of the

case. Before the Court is Magistrate Judge Arteaga's Report and Recommendation (ECF No. 37)

that this Court should deny Petitioner Vincent Harris' Amended Petition for a Writ of *Habeas*

*Corpus* (ECF No. 12, the "Amended Petition"). Petitioner has filed two objections to the Report

and Recommendation. ECF No. 38. For the reasons stated below, the Court will adopt Judge

Arteaga's Report and Recommendation in full and overrule Petitioner's objections.

### I.     BACKGROUND

Petitioner Vincent Harris is serving a life sentence for first-degree murder for the shooting

death of Joseph Knight. ECF No. 37 at 1. During his trial in the Philadelphia County Court of

Common Pleas in March 2015, the Commonwealth presented testimony from two eyewitnesses

and ballistics evidence that a gun recovered from Harris' grandparents' house fired eleven of

fifteen cartridge casings recovered from the crime scene. *Id.* at 7–9. Approximately six months

after the shooting, Harris was arrested at his grandparents' house for narcotics offenses unrelated

to the homicide investigation. *Commonwealth v. Harris*, No. 1221 EDA 2015, 2016 WL 5719362,

at *6–7 (Pa. Super. Ct. Sept. 30, 2016) (affirming Harris' conviction and adopting the trial court's

opinion discussing the issues on direct appeal). Harris was living with his grandparents at the time, and the police recovered a gun from his grandparents' house. *Id.* A ballistics expert testified at trial that at least two firearms were used at the crime scene and explained that eleven of the fired cartridge casings recovered from the crime scene were fired from the gun recovered from Harris' residence. *Id.* at *9. One of the two eyewitnesses, Linsday Waltower, identified Harris as one of two shooters who were riding bicycles past Waltower, who was standing near the intersection where Knight was shot, seconds before the shooting began. *Id.* at *7. The other eyewitness, Duron Flynn, could not be found at the time of the trial, but had testified at the May 2013 preliminary hearing. ECF No. 37 at 5, 7. The trial court admitted Flynn's testimony under Pennsylvania Rule of Evidence 804(A)(5), finding that Harris's then-counsel had a full and fair opportunity to cross-examine Flynn at the preliminary hearing. *Id*. at 5–6. Prior to his trial, Harris rejected a plea offer of twenty-seven and a half to fifty-five years, and the trial court conducted a colloquy to confirm that he made this decision knowingly and voluntarily. *Id.* at 6. At the end of the five-day trial, the jury convicted Harris of first-degree murder and related offenses. *Id.* at 9. The trial court imposed a mandatory sentence of life imprisonment without parole. *Id.*

Harris' conviction and sentence were affirmed on direct appeal, and the Pennsylvania Supreme Court denied review. *Id.*; *Harris*, 2016 WL 5719362, at *3, *allocatur denied*, 166 A.3d 1210 (Pa. 2017). Harris then filed a *pro se* Post-Conviction Relief Act ("PCRA") petition in state court in May 2017. ECF No. 37 at 10. His appointed counsel later filed an amended petition. *Id.* The initial PCRA court dismissed the petition for lack of merit. *Id.* at 11. The Superior Court adopted the PCRA court's reasoning, and the Pennsylvania Supreme Court denied review. *Id.* at 12; *Commonwealth v. Harris*, 248 A.3d 479 (Pa. Super. Ct. 2021), *allocatur denied*, 262 A.3d 1250 (Pa. 2021).

Harris filed a timely habeas petition in federal court in August 2022, asserting four claims: (1) ineffective assistance of trial counsel in discussing the plea offer; (2) trial counsel's failure to object to the prosecutor's "speculative" testimony that Flynn was "scared" to testify; (3) ineffective assistance of direct appeal counsel for not raising a Sixth Amendment Confrontation Clause challenge; and (4) trial counsel's failure to object to hearsay at the pre-trial unavailability hearing and trial. ECF No. 1 at 8–13. Harris acknowledged non-exhaustion of the first, third, and fourth grounds, but alleged that his state PCRA counsel was ineffective to excuse his failure to exhaust. ECF No. 37 at 12–13. With leave of court, Harris amended his petition to add a claim that his trial counsel's failure to meet with him before trial amounted to a constructive denial of counsel. *Id.* at 13; ECF No. 12 at 13–31. The Commonwealth filed its response to the Amended Petition on October 12, 2023. ECF No. 25. Harris filed a reply on December 7, 2023. ECF No. 29. The case was referred to Magistrate Judge Arteaga for the preparation of a Report and Recommendation, ECF No. 31, which was completed on October 14, 2025, ECF No. 37. Harris timely filed objections to the Report and Recommendation on October 22, 2025. ECF No. 38. Accordingly, the Report and Recommendation (ECF No. 37) is ripe for review.

## II.    LEGAL STANDARD

The district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of a habeas petition pending before the court. 28 U.S.C. § 636(b)(1)(B). "Within fourteen days after being served with a copy" of the magistrate judge's report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." *Id.* § 636(b)(1)(C).

Upon review of the report and recommendation from the magistrate judge, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made," if the objections are timely and properly filed. *Id.; see Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984) (stating that "a *de novo* determination is not always required" and district courts need not make *de novo* determinations where objections are untimely or not specific). Objections that merely restate arguments already considered by the magistrate judge are not entitled to *de novo* review. *Gray v. Delbiaso*, No. 14-cv-4902, 2017 WL 2834361, at *4, (E.D. Pa. June 30, 2017). Objections that do not respond to the magistrate judge's recommendation but rather repeat conclusory statements from the original petition are generally overruled. *Prout v. Giroux*, No. 14-cv-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016).

## III.   DISCUSSION

Petitioner makes two objections to Judge Arteaga's Report and Recommendation. ECF No. 38. First, Petitioner argues that Judge Arteaga should have considered evidence outside the state court record to find that Petitioner's initial PCRA counsel abandoned him or was grossly negligent to excuse the procedural default of his ineffective assistance of trial counsel claim. *Id.* at 1–4. Second, Petitioner argues that Judge Arteaga should have found that Pennsylvania state law precludes defense counsel from examining a witness on issues of credibility at a preliminary hearing, thereby making improper the Philadelphia trial court's admission of Flynn's testimony at trial. *Id.* at 4–6. The Court will address each objection in turn.

### A.  Objection One

Petitioner's first objection challenges Judge Arteaga's application of *Shinn v. Ramirez*, 596 U.S. 366 (2022), to bar consideration of evidence that was not presented to the state court. *Id.* at 2–3. Harris contends that this new evidence would establish that his initial PCRA counsel

4

abandoned him or acted with gross negligence. *Id*. Harris argues that when PCRA counsel abandons a client, which is what Harris alleges happened here, the agency relationship providing the rationale for *Shinn's* holding is severed and *Shinn* should therefore not be read to overrule *Martinez v. Ryan*, 566 U.S. 1 (2012), in this instance. *Id.* at 2. Petitioner also argues that Judge Arteaga erred in declining to apply the carve-out in *Martinez* to 28 U.S.C. § 2254(e)(2)'s diligence requirement—that is, Petitioner contends that habeas petitioners are permitted to introduce evidence outside the state court record to establish that their state post-conviction counsel was grossly negligent. *Id.* at 3–4.

28 U.S.C. § 2254(e)(2) provides that a prisoner who fails to develop the factual record of his federal claim in state court proceedings is entitled to an evidentiary hearing on the claim in federal court in only two scenarios. 28 U.S.C. § 2254(e)(2); *see Shinn*, 596 U.S. at 381. The claim must rely on either (1) "a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable" by the Supreme Court or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." *Shinn*, 596 U.S. at 381 (citing §§ 2254(e)(2)(A)(i), (ii)). If the petitioner can satisfy either of these two exceptions, he then must also show that "further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Id.* (citing § 2254(e)(2)(B)). "Finally, even if all of these requirements are satisfied, a federal habeas court still is not *required* to hold a hearing or take any evidence." *Id.*

Harris misconstrues the scope of the *Martinez* exception post-*Shinn*. In *Martinez,* the Supreme Court held that procedurally defaulted ineffective assistance of trial counsel claims are not barred in federal court where state law requires such claims to be raised in a post-conviction collateral proceeding (*i.e.*, prohibits ineffective assistance of counsel claims on direct appeal) and

5

no PCRA counsel was appointed for the state collateral proceeding or the PCRA counsel was ineffective. 566 U.S. at 17. In *Shinn*, the Supreme Court did not overrule *Martinez* but significantly narrowed its scope, holding that under 28 U.S.C. § 2254(e)(2), "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record" based on a claim that a prisoner's state PCRA counsel was ineffective. 596 U.S. at 382. This is because the prisoner "'bears the risk in federal habeas for all attorney errors made in the course of the representation,' unless counsel provides constitutionally ineffective assistance." *Id*. at 382–83 (quoting *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)) (internal quotations and second citation omitted). However, since there is no constitutional right to counsel in state postconviction proceedings, *Davila v. Davis*, 582 U.S. 521, 524 (2017), "a prisoner ordinarily must bear responsibility for *all* attorney errors during those proceedings." *Shinn*, 596 U.S. at 383 (cleaned up and citation omitted) (emphasis added). State PCRA counsel's "negligent failure to develop the state postconviction record" is just one of those attorney errors for which a prisoner is responsible. *Id. Shinn's* classification of this "negligent failure" as "among those [attorney] errors" indicates that prisoners are responsible for other errors by their PCRA counsel as well. *Id.*

Here, Petitioner has argued that he should not be "at fault" when his postconviction counsel abandoned him or was grossly negligent, attempting to distinguish the instant case from *Shinn*, which Petitioner contends involved only "garden-variety negligence." ECF No. 38 at 2; ECF No. 12 at 12. However, as discussed above, because prisoners are not constitutionally entitled to postconviction counsel, *Davila*, 582 U.S. at 524, prisoners always bear the cost of any mistakes made by their attorneys during PCRA proceedings, *Shinn*, 596 U.S. at 383. *Shinn* does not distinguish between "garden-variety negligence" and "gross negligence." Indeed, *Shinn* held that negligence is only one such attorney error for which a prisoner is responsible, clarifying that

6

prisoners bear responsibility for "*all* attorney errors" during postconviction proceedings. *Id.* (emphasis added). "*All* attorney errors" necessarily encompass gross negligence in addition to general negligence. Harris has cited no case law to the contrary nor any authority supporting his agency theory that *Shinn* is inapplicable when PCRA counsel abandons his client. *See* ECF No. 38 at 1–4. Upon closer inspection, Harris' agency argument falls apart. If, as Harris argues, "[t]he entire rationale for *Shinn* is that PCRA counsel is the agent of the petitioner and the former's negligence in causing the default must therefore be attributed to the petitioner," *id.* at 2, then, when PCRA counsel abandons his client and therefore is no longer serving as the petitioner's agent, the petitioner essentially has no agent and is acting for himself, so at that point, he must bear responsibility for his own failure to develop the record. It follows then that Harris is responsible for failing to develop the evidentiary record during state proceedings, whether or not his initial PCRA counsel abandoned him. Here, Harris concedes that the evidence he seeks to introduce— prison visitor logs, telephone records, and declarations—to prove his ineffective assistance of trial counsel claim are not part of the state court record. *See* ECF No. 12 at 13–18, 32–33.

Harris' attempt to invoke *Martinez* is also to no avail. *See* ECF No. 38 at 3–4. Post-*Shinn*, *Martinez* leaves a narrow exception for situations where ineffective assistance of postconviction counsel can be a "cause" to forgive procedural default of an ineffective assistance of trial counsel claim, in cases where a state forecloses direct review of that claim. *Shinn*, 596 U.S. at 384. However, the ineffective assistance of trial counsel claim must be fully supported by the state court record, as the Supreme Court in *Shinn* declined to extend *Martinez* "so that ineffective assistance of postconviction counsel can excuse a prisoner's failure to develop the state-court record under § 2254(e)(2)," explaining that Congress foreclosed such an expansion when it passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Id*. Even though *Martinez* remains

7

good law, it effectively applies only in the rare circumstance where postconviction counsel failed to raise a claim for ineffective assistance of trial counsel during the initial state postconviction proceedings, but the existing state court record can nonetheless demonstrate the trial counsel's deficiencies. *See id.* at 384–85.

The Third Circuit has consistently applied *Shinn* to enforce these limitations. For example, in *Williams v. Superintendent Mahanoy SCI*, the Third Circuit refused to consider evidence outside of the state court record showing that the petitioner's trial counsel was ineffective, stating that the "AEDPA does not allow [the court] to excuse [the petitioner's] separate failure to develop the record just because his state post-conviction lawyer did a bad job." 45 F.4th 713, 720 (3d Cir. 2022). Similarly, in *Taylor v. Commissioner of Pennsylvania Department of Corrections*, the Third Circuit reaffirmed that "a prisoner bears such responsibility even when his state postconviction counsel was negligent in developing the state court record." 150 F.4th 188, 195, 196 (3d Cir. 2025) (holding that *Shinn* forecloses petitioner's position that his failure to develop the state court record should be excused because his state postconviction counsel was ineffective). Likewise, Harris' failure to develop the state record cannot be excused based on his allegations that his initial PRCA counsel abandoned him or was grossly negligent.

Putting aside the evidentiary bar to the introduction of evidence outside the state record, even assuming, *arguendo*, that Harris can successfully demonstrate deficient performance by his trial counsel, habeas relief is still not available because he cannot satisfy *Strickland*'s prejudice prong. The Commonwealth presented convincing, independent evidence at trial—two eyewitness identifications and physical ballistics evidence linking Harris to the shooting—that strongly supported a guilty verdict. *See* ECF No. 37 at 11. Given this record, Harris has not shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The likelihood of a different outcome must be "substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and Harris has offered nothing beyond speculation to suggest that, absent the alleged deficiencies regarding counsel's pretrial preparation, the jury would have reached a different verdict. As to Harris's claim that his trial counsel provided him with ineffective assistance with respect to the Commonwealth's plea offer, ECF No. 12 at 32–48, the prejudice inquiry under *Strickland* requires the petitioner to demonstrate a reasonable probability that, but for counsel's deficient advice, he would have accepted the plea offer, the court would have accepted its terms, and the ensuing "conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Here, the trial court conducted an on-the-record colloquy during which Harris confirmed that his decision to reject the plea offer of twenty-seven and a half to fifty-five years was knowing and voluntary. ECF No. 37 at 28; ECF No. 30-4. Harris has offered nothing beyond bare assertions to show that, had his trial counsel provided more adequate advice, he would have accepted the plea offer rather than proceed to trial. Harris has failed to establish prejudice for his rejection of the plea offer.

For the reasons stated, Harris' first objection is overruled.

### B.  Objection Two

Petitioner's second objection is that Judge Arteaga erred in concluding that Pennsylvania law does not preclude defense counsel from questioning a witness on issues of credibility at a preliminary hearing, absent a court order so permitting. ECF No. 38 at 4–6. This objection is without merit. Pennsylvania law does not prohibit cross-examination regarding issues such as credibility, bias, or motive at preliminary hearings. Such inquiries are simply not the focus of these

preliminary proceedings. *Commonwealth v. Wholaver*, 989 A.2d 883, 902 (Pa. 2010) (stating that "[a]lthough a preliminary hearing is concerned with probable cause," defense counsel could inquire about a witness's bias, motive to lie, and credibility when appropriate). The purpose of a preliminary hearing is to determine whether there is a *prima facie* showing of a crime and whether the defendant was in some way legally responsible. *Liciaga v. Ct. of Common Pleas of Lehigh Cnty.*, 566 A.2d 246, 248 (Pa. 1989).

Although the credibility of witnesses is not typically the focus of a preliminary hearing, the defendant is still permitted to cross-examine witnesses about their biases and motives in order to undermine the prosecution's case, and many defendants do take the opportunity to do so during a preliminary hearing. *See, e.g., Wholaver*, 989 A.2d at 902; *Commonwealth v. Paddy*, 800 A.2d 294, 313 (Pa. 2002) (finding trial counsel was not ineffective for failing to object to the admission of preliminary hearing testimony of a witness when defendant's preliminary hearing counsel "had obtained at least a portion of [the witness's] criminal history and put it to effective use"); *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa. Super. Ct. 1995) (affirming trial court's admission of preliminary hearing testimony of an unavailable witness at trial because defendant "was not precluded from pursuing any line of inquiry" during his cross-examination of the witness at the preliminary hearing); *Commonwealth v. Leaner*, 202 A.3d 749, 776–77 (Pa. Super. Ct. 2019) (affirming trial court's admission of preliminary hearing testimony where defendant "had the opportunity to inquire as to what [the witness] saw the night of the incident, the identity of the person involved in the incident, and the circumstances surrounding his statement to [the] police" (second alteration in original)). Especially when there is a chance that the preliminary hearing witness may not show up at trial, defense counsel is highly incentivized to conduct as thorough a cross-examination as possible. *See Commonwealth v. Leak*, 22 A.3d 1036, 1045, 1047 (Pa. Super.

Ct. 2011) (concluding that defendant had a full and fair opportunity to cross-examine witness at preliminary hearing where defendant "was on notice that [the witness] was terminally ill and that the Commonwealth intended to preserve [the witness's] testimony" and defendant "was not denied access to any vital impeachment evidence at the time of the preliminary hearing").

In cases where Pennsylvania courts have rejected the admission of preliminary hearing testimony at trial, which Petitioner does not cite in support of his position in either his Amended Petition or his objections, the prosecution has always failed to provide the defendant with vital impeachment evidence at the time of the hearing, usually in the form of a witness's criminal history or a prior statement by the witness to the police. *See, e.g., Commonwealth v. Bazemore*, 614 A.2d 684, 687 (Pa. 1992) (holding that preliminary hearing testimony was inadmissible at trial where defense counsel was not made aware of the witness' prior inconsistent statement to the police or the witness' prior criminal record); *Commonwealth v. Johnson*, 758 A.2d 166, 173 (Pa. Super. Ct. 2000) (concluding that trial court rightfully excluded preliminary hearing testimony where the Commonwealth failed to provide defense counsel with the witness' prior statements to the police and where the preliminary hearing judge precluded defendant from pursuing a substantive line of questioning); *Commonwealth v. Smith*, 647 A.2d 907, 912, 914 (Pa. Super. Ct. 1994) (holding that preliminary hearing testimony of the only eyewitness in the case was inadmissible where the Commonwealth did not disclose the witness' criminal history and pending criminal charges to the defense at the time of the preliminary hearing). Conversely, where the defendant "was not denied access to any vital impeachment evidence at the time of the preliminary hearing," courts generally find that the defendant was afforded a full and fair opportunity to cross-examine the witness and will admit the testimony at trial if the witness is unavailable. *Leak*, 22 A.3d at 1047; *see also, e.g., Leaner*, 202 A.3d at 776; *Paddy*, 800 A.2d at 313–14.

11

Here, the prosecutor provided Harris' then-counsel with a copy of Flynn's criminal history record and Flynn's October 15, 2012 statement to the police before the start of the preliminary hearing. ECF No. 30-3 at 4. Significantly, the prosecutor told Harris' attorney that he intended to preserve the witness' testimony, *id.*, thereby putting Harris' attorney on notice that the Commonwealth anticipated needing to use Flynn's preliminary hearing testimony at trial because there was a chance that Flynn would be unavailable to testify at Harris' trial. Having been informed of the Commonwealth's intention to preserve Flynn's testimony, Harris' attorney should have been motivated to conduct a comprehensive cross-examination of Flynn during the preliminary hearing. Indeed, the record demonstrates that Harris' counsel did in fact cross-examine Flynn on multiple issues relating to his credibility and bias, including his ability to see in the dark, his delay in reporting the shooting to the police, his open criminal charges, his motivation in testifying against Harris, and was able to pull out inconsistencies between his preliminary hearing testimony and his prior statement to the police. ECF No. 37 at 31; ECF No. 30-10 at 4–6. The transcript of Flynn's preliminary hearing testimony reveals that the preliminary hearing judge only constrained Harris' counsel once during his cross-examination of Flynn when he attempted to ask Flynn to speculate as to someone else's frame of mind. ECF No. 37 at 31–32; ECF No. 30-10 at 6. Flynn's cross-examination spans approximately ten pages in the preliminary hearing transcript, compared to the approximate six pages of his direct examination, indicating that Harris' attorney at least made an attempt to conduct a thorough cross-examination. *See* ECF No. 30-10.

Harris argues in both his Amended Petition and his objections to Judge Arteaga's Report and Recommendation that his then-counsel did not have the opportunity to inquire into certain issues regarding Flynn's credibility at the preliminary hearing. ECF No. 12 at 56–60; ECF No. 38 at 5–6. The credibility issues that Harris states his attorney was unable to ask Flynn about at the

12

preliminary hearing include a plea offer extended to Flynn two days after the hearing, residential burglaries committed by Flynn for which he had not been formally charged, and Flynn's affiliation with a gang. ECF No. 12 at 59–60. However, to assert that he did not have a full and fair opportunity to cross-examine a witness at a preliminary hearing, the defendant "must establish that he was deprived of 'vital impeachment evidence' at or before the time of the preliminary hearing." *Leaner*, 202 A.3d at 775 (quoting *Leak*, 22 A.3d at 1044). The plea offer that Flynn received *after* the preliminary hearing did not exist at the time of the hearing, and even Harris acknowledges that "the Commonwealth refrained from making any plea offer to Flynn for months leading up to his May 28 testimony," ECF No. 12 at 60, and so, the plea offer does not constitute "vital impeachment evidence" that the Commonwealth had in its possession and failed to provide to Harris' attorney at the time of the preliminary hearing. *See Leak*, 22 A.3d at 1045 (stating that because the prosecutor was not in possession of the victim's hospital records at the time of the preliminary hearing, defendant was not denied access to "vital impeachment evidence" at the time of the hearing (citation omitted)). As to the additional burglaries committed by Flynn, Harris fails to explain why this information is vital impeachment evidence given that the Commonwealth provided Harris' attorney with Flynn's criminal record that already contained burglary and theft charges. *See id.* (noting that defendant failed to explain how the aforementioned hospital records constituted vital impeachment evidence). Finally, the fact that Flynn was a member of a gang was wholly irrelevant to Harris' prosecution because there is no evidence in the record that Harris was affiliated with a rival gang or that the shooting was gang-related, beyond mere speculation in the Amended Petition. *See generally* ECF Nos. 30-3–30-10; ECF No. 12 at 60.

There are no Confrontational Clause violations if there are no "specific statutory or court-imposed restrictions on the scope of questioning" at the preliminary hearing. *Ross v. Dist. Att'y of*

*the Cnty. of Allegheny*, 672 F.3d 198, 208 (3d Cir. 2012) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 54 (1987)) (cleaned up). Here, the preliminary hearing judge imposed no such restrictions on the scope of questioning during Harris' counsel's cross-examination of Flynn at the preliminary hearing. Apart from having a speculation objection sustained, Harris' attorney "was not precluded from pursuing any line of inquiry" at the preliminary hearing. *Cruz-Centeno*, 668 A.2d at 545; ECF No. 30-10 at 4–6. That "the presiding judge at a preliminary hearing has no authority to make credibility determinations," ECF No. 38 at 5, does not mean that questions about a witness' credibility are automatically prohibited at a preliminary hearing. Because Harris' attorney was provided with vital impeachment evidence—Flynn's criminal record and prior statement to the police—before the preliminary hearing, Harris was afforded a full and fair opportunity to cross-examine Flynn at the preliminary hearing. That Harris' attorney at the time may not have conducted as comprehensive an examination as Harris' now-PCRA attorney may have preferred is of no import. *See Cruz-Centeno*, 668 A.2d at 542 ("The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing as extensively as he might have done at trial." (citation omitted)). Thus, the state court reasonably found that Harris had a full and fair opportunity to cross-examine Flynn at the preliminary hearing, and Judge Arteaga did not err in concluding that the state court reasonably applied the Confrontation Clause.

For the reasons stated, Harris' second objection is overruled.

## IV.    CONCLUSION

For the foregoing reasons, the Court will overrule Petitioner's objections (ECF No. 38) to Judge Arteaga's Report and Recommendation and will adopt the Report and Recommendation (ECF No. 37) in full. The Court will deny Harris' Amended Petition for Writ of *Habeas Corpus*

(ECF No. 12). No certificate of appealability will issue because Harris has not made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2).

An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**